UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Jamie R. Wool, f/k/a James    :
Nichols, Michelle Nadeau-     :
Nichols,                      :
        Plaintiffs,           :
                              :
        v.                    :   Case No. 2:11-cv-169
                              :
Andrew Pallito, Vermont       :
Department of Corrections,    :
and Unknown Members of So     :
Called IDAP Treatment         :
Program,                      :
                              :
        Defendants.           :

OPINION AND ORDER
(Docs. 19, 42, 48, 58, 59, 62, 71, 75, 76 and 77)

Plaintiffs Jamie Wool f/k/a James Nichols and his wife

Michelle Nadeau-Nichols, each proceeding *pro se*, claim that

the Vermont Department of Corrections ("DOC") has placed

unconstitutional conditions on Mr. Wool's furlough release.

Those conditions allegedly include restrictions on Mr.

Wool's ability to contact his wife and her children.  Mr.

Wool also claims that the DOC has retaliated against him for

filing this lawsuit.

Currently before the Court is Mr. Wool's motion for

preliminary injunctive relief on the basis of his

retaliation claim.  Plaintiffs have also moved the Court to

compel and expedite discovery; to add certain exhibits to

the record; for leave to amend the Complaint; for a hearing on the retaliation issue; and to exclude certain testimony from trial. For the reasons set forth below, the motion for preliminary injunctive relief is DENIED. The motion to amend is DENIED without prejudice, and may be re-filed in a format that complies with the Local Rules. The Court will allow additional time for discovery, and all pre-trial motions pertaining to exhibits and testimony are DENIED as premature.

### Factual and Procedural Background[1]

Mr. Wool is serving a state sentence of nineteen months to seven years for various crimes. He is currently on furlough release in the community. His minimum sentence expired on February 14, 2009, and he claims to have been on community release since March 24, 2011.

Mr. Wool's past criminal offenses include domestic assault, violating abuse prevention orders, and unlawful restraint. The DOC has therefore required him to participate in its Intensive Domestic Abuse Program ("IDAP"). One condition of IDAP is that Mr. Wool have no

---

[1] The facts of this case were summarized in the Court's previous ruling (Doc. 49) on plaintiffs' initial motion for a preliminary injunction, and are substantially repeated here.

contact with his family.  The Complaint alleges that state court orders specifically allow him such contact, and contends that the DOC does not have the power to "amend" or "void" those orders.

Mr. Wool's wife, plaintiff Michelle Nadeau-Nichols, lives in Essex, Vermont with her two children.  The children are not Mr. Wool's biological children.  Mr. Wool reports that he and Ms. Nadeau-Nichols began dating in September 2008, and married on June 3, 2011, twenty-seven days before he filed this action.  Ms. Nadeau-Nichols has submitted an affidavit in which she states that "[a]t no time has James ever acted in any way to cause me to feel uncomfortable or unsafe in any way.  At no time has James ever threatened me with physical harm." (Doc. 7 at 1.)  She also states that she is aware of Mr. Wool's prior convictions, and that she has read the relevant police reports.

Mr. Wool filed his Complaint in this case on June 30, 2011.  For relief, the Complaint requests damages, as well as injunctive relief "enjoining Defendants from acting on their propensity for retaliation, and further a temporary injunction enjoining Defendants from denying [Mr. Wool] private contact including co-habitation with his wife, a

non-victim." (Doc. 4 at 3.) Plaintiffs subsequently moved to add Ms. Nadeau-Nichols as a party, and both plaintiffs moved again for preliminary injunctive relief. (Docs. 9, 19 and 20.) The motions for injunctive relief addressed the necessity of the contact restrictions and the question of ongoing retaliation.

On November 21, 2011, the Court held a hearing on all pending motions. At the conclusion of the hearing, the Court granted the motion to add Ms. Nadeau-Nichols as a plaintiff. The Court also ordered defendants to file a memorandum regarding the IDAP program, and to produce the DOC's case notes regarding Mr. Wool for the Court's *in camera* review. Depositions by Mr. Wool were not allowed at that time.

Defendants subsequently filed an opposition to plaintiffs' motions for preliminary injunctive relief, but did not address the issue of retaliation. (Doc. 43.) Defendants' opposition was supported by affidavits from DOC employees Kim Bushey, Laurie Gage and Charles Corbally. Those affidavits addressed the reasons for contact restrictions generally, and for Mr. Wool specifically.

Ms. Bushey's affidavit explained that contact

restrictions are a technique used by the DOC to manage the risks posed by inmates who have histories of domestic violence. The level of risk posed by a given inmate is assessed, in part, by an actuarial measurement tool known as the Level of Services Inventory, or "LSI-R." Mr. Wool's LSI-R score is 37, which reportedly translates into a 57 percent chance of recidivism, "placing him in the category of moderate to high risk of recidivating." (Doc. 43-1 at 2.)

The LSI-R score can be broken down into "need areas," which "represent different aspects of an offender's life that lack the type of support that would enhance the likelihood of a successful reintegration into society." Id. According to Ms. Bushey, family and friends are a high need area for Mr. Wool. "[M]any of Mr. Wool's relatives and friends have criminal records, low income, and or/instability in their housing or job." Id.

One reported illustration of family as a need area is Mr. Wool's wife. The DOC affidavits attest that Ms. Nadeau-Nichols has struggled with addiction issues, has been convicted of federal drug crimes, and is currently under the supervision of a federal probation officer. Id.; (Doc. 43-2

at 2.)  She has also allegedly "conspired" with Mr. Wool "to violate the terms of his furlough release." (Doc. 43-2 at 2.)  Consequently, the DOC concluded that she is "not a pro-social influence on Mr. Wool." (Doc. 43-2 at 2.)  In response, Mr. Wool asserted that both he and his wife have "accomplished and continue to accomplish substantial strides in changing our lives around," that they have both been sober since at least May 2010, and that defendants' affidavits lack evidentiary support.  (Doc. 47.)

The Court denied the initial motion for preliminary injunctive relief, concluding that

> DOC officials have offered detailed reasons for imposing contact and geographic restrictions on Mr. Wool, and for requiring IDAP participation. Based upon this record, and because a merits assessment of the case currently weighs in favor of defendants, the Court will heed [U.S. Supreme Court precedent] and refrain from substituting its judgment for that of the DOC.

(Doc. 49 at 17.)  The Court also specifically declined to address the retaliation issue, as well as a related motion to compel discovery.

The motion for injunctive relief with respect to retaliation (Doc. 19) is now before the Court.  The motion asserts that after this lawsuit was filed, Community Program Supervisor Charles Corbally informed Ms. Nadeau-Nichols that

"now we must go by [the] book when it comes to dealing w[ith] James." (Doc. 19 at 1.) Mr. Wool alleges that he was subsequently barred from being in Essex Junction, Vermont outside of work hours, and was denied private contact with his wife and her children. He was also returned to jail for a short period of time after a witness allegedly saw him in Essex Junction in violation of his furlough conditions. *Id.* at 2. Mr. Wool further claims that he was placed on a GPS monitor unnecessarily, was sanctioned for being self-employed as a sub-contractor, and was punished for driving past the home of one of his victims. *Id.* at 2-3.

Plaintiffs have requested a hearing on the preliminary injunction motion, specifically to address the question of whether "Corbally et al would have made the ban from Essex except for the lawsuit." (Doc. 71 at 1.) As noted above, other pending motions involve plaintiffs' discovery requests, proposed trial exhibits, and the opportunity for further discovery. Plaintiffs have also moved to amend the Complaint, and for leave to file an interlocutory appeal. (Doc. 62 at 6.)

<u>Discussion</u>

I.  <u>Preliminary Injunctive Relief</u>

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  "In order to justify a preliminary injunction, a movant must demonstrate 1) irreparable harm absent injunctive relief; and 2) 'either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor.'"  *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010) (quoting *Almontaser v. N.Y. Dep't of Educ.*, 519 F.3d 505, 508 (2d. Cir. 2008)).[2]

Generally, the purpose of a preliminary injunction is to preserve the status of the parties until a determination on the merits of the plaintiffs' claims can be made.  *Univ.*

---

[2] The "serious question" prong may not apply in this case, as a movant seeking a stay of governmental action taken in the public interest pursuant to a statutory or regulatory scheme must show a likelihood of success on the merits, and may not resort to the "less rigorous fair-ground-for-litigation standard." *See Plaza Health Labs, Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989).  The Court finds that in this case, plaintiffs have not met their burden under either standard.

*of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). However, where a party seeks an injunction that is mandatory in nature in that it "command[s] some positive act" as opposed to merely maintaining the *status quo*, a more rigorous standard is applied, and a preliminary injunction should issue "only upon a clear showing that the moving party is entitled to the relief requested or where extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (citations omitted).

Defendants argue that Mr. Wool has not met his burden with respect to the merits of his claim. Specifically, and relying on the DOC affidavits submitted previously, they submit that Mr. Wool "has not established that the conditions on his furlough release are substantially motivated" by his filing a lawsuit. (Doc. 57 at 4.) "To the contrary," they contend, "the Department has established in its prior memorandum that the furlough conditions are for the purposes of rehabilitation and public safety." *Id.*

The Second Circuit has cautioned that courts must approach prisoner retaliation claims "with skepticism and

particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). The Second Circuit has also warned that claims of retaliation are "easily fabricated," and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).

In order to prevail on a retaliation claim, a plaintiff has the burden to prove that (1) he engaged in constitutionally protected conduct, (2) prison officials took an adverse action against him, and (3) a causal connection exists between the protected speech and the adverse action. *Id.* (citations omitted); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). "[I]n the prison context [the Second Circuit has] previously defined

'adverse action' *objectively*, as retaliatory conduct 'that
would deter a similarly situated individual of ordinary
firmness from exercising . . . constitutional rights.'"
*Gill*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346,
353 (2d Cir. 2003)) (emphasis in original).  This objective
test applies even though a particular plaintiff was not
himself deterred.  *Id.*  If the plaintiff can carry that
burden, defendants will still be entitled to judgment in
their favor if they can show, by a preponderance of the
evidence, that they would have taken the same action in the
absence of the prisoner's First Amendment activity.
*Davidson*, 193 F.3d at 148-49; *see Hynes v. Squillace*, 143
F.3d 653, 657 (2d Cir. 1998); *Lowrance v. Achtyl*, 20 F.3d
529, 535 (2d Cir. 1994).

It is undisputed that the filing of a lawsuit is
protected speech.  *See Dougherty v. Town of N. Hempstead Bd.
of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002) ("The
rights to complain to public officials and to seek
administrative and judicial relief from their actions are
protected by the First Amendment."); *see also Colon v.
Coughlin*, 58 F.3d 865, 972 (2d Cir. 1995) ("Prisoners, like
non-prisoners, have a constitutional right . . . to petition

the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right."). Therefore, two questions presented in this case are: (1) whether recent restrictions and sanctions imposed on Mr. Wool constituted adverse actions, and (2) whether those actions were causally connected to his filing a lawsuit.

Mr. Wool's primary claim is that he would not have been barred from Essex Junction, or sanctioned for unauthorized contacts, but for the filing of this litigation. According to the affidavit of Supervisor Corbally, Mr. Wool was released from prison on March 22, 2011 and immediately returned for a short period after having unauthorized contact with his wife. The instant lawsuit was filed on June 27, 2011. After the filing, Corbally allegedly told Nadeau-Nichols that the DOC would have to treat Wool "by [the] book," and Wool was allegedly barred from entering Essex Junction – where both his wife and multiple victims reside – outside of work hours. Wool was again returned to prison for a short period in November 2011 for having unauthorized contact with his wife. (Doc. 43-2 at 1.)

The Corbally affidavit further states that Wool was

sanctioned in September 2011 for unauthorized contact with one of his victims. *Id.* Mr. Wool denies having had such contact, and plaintiffs assert that the report of unauthorized contact was provided by "a mysterious confidential informant." (Doc. 59 at 3.) Notwithstanding the source, the preponderance of evidence indicates that the DOC received a report of unauthorized victim contact, and took action accordingly.

To obtain preliminary injunctive relief, Mr. Wool must show that he is likely to prove these sanctions constituted "adverse actions" that would "deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Davis*, 320 F.3d at 353. Mr. Wool claims that the sanctions were harmful because they effectively barred him from seeing his wife, and punished him for being in the same town as his victims. The record suggests, however, that private contact restrictions with his wife and his victims were in place prior to this litigation. (Doc. 62 at 2) (plaintiff's motion stating that "Mr. Wool has been in INDAP and/or IDAP related programs since 2009 and in 3 years has not been allowed private contact"); (Doc. 4 at 3) (references in Complaint to

restraining orders preventing contact with "girlfriends").
The broader geographic ban subsequently imposed by the DOC
does not appear to have added significantly to those
existing restrictions.[3]  Where, as here, an allegedly
retaliatory act is *de minimis*, it is "outside the ambit of
constitutional protection."  *Dawes*, 239 F.3d at 492-93;
*Jones v. Harris*, 665 F. Supp. 2d 384, 397 (S.D.N.Y. 2009).

Furthermore, Mr. Wool has failed to carry his burden
with respect to an actionable causal connection.  In support
of his claim, Mr. Wool alleges temporal proximity and a
statement revealing motive.  Specifically, Mr. Corbally
allegedly warned that once the Complaint in this case was
filed, Mr. Wool would be treated "by the book."  This
statement, of course, does not suggest any unlawful or
inappropriate action.  At worst, it implies that the DOC
would be interpreting its rules strictly, and not giving
Wool any leniency he may have enjoyed previously.

The law does not require that, once litigation is

---

[3] A filing by Ms. Nadeau-Nichols clarifies that the
sanction for unauthorized contact occurred after she and Mr.
Wool worked together at a job site.  (Doc. 59 at 3.)  The
geographic restriction would not have triggered this
violation, as Mr. Wool was allowed in Essex Junction during
work hours.

commenced, parties treat each other in exactly the same manner as they had prior to the litigation. Instead, it may be prudent for those parties to act more formally. For example, in *Tuccio v. Marconi*, 589 F.3d 538, 541 (2d Cir. 2009), after a citizen commenced litigation against a Town, Town personnel began communicating with the citizen exclusively in writing. When the citizen claimed that his inability to speak with Town officials constituted retaliation, the Second Circuit noted that government officials are not "compelled by law to behave with a litigation adversary exactly as they would if the person were not a litigation adversary. There are many precautions prudently taken with a litigation adversary to avoid possible prejudice to one's position in the litigation." *Id.* "The mere fact that a government official takes such reasonable precautions, notwithstanding that the official would not have taken them if the counterparty had not been a litigation adversary, does not make such actions unconstitutional retaliation . . . ." *Id.*

Here, Mr. Wool claims that his "by the book" treatment resulted in a geographic restriction and a series of sanctions. He has not shown, however, that this treatment

was anything more than a "reasonable precaution" in light of pending litigation. *Id.* Moreover, as discussed above, it is not clear from the record that the geographic restriction resulted in greater punishments. *See id.* (holding that more formal treatment is not actionable "especially" if it does not cause harm). The Court therefore finds that, although Mr. Wool has alleged a causal connection between this litigation and the DOC's post-litigation conduct, he has not carried his burden with regard to whether that conduct is actionable.

Finally, defendants contend that any alleged actions taken by DOC officials after this lawsuit was filed were taken "for the purposes of rehabilitation and public safety." (Doc. 57 at 4.) As the Court found previously, there is evidence to support this contention. Even if the Court accepts plaintiffs' claim of a retaliatory motive, the Second Circuit has held "if taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Although the DOC affidavits do not address the question of retaliation directly, they do support the conclusion, based

upon the current record, that there were "proper reasons"
for the actions taken. *Id.*

Lower courts have been cautioned to recognize that
"prison officials have broad administrative and
discretionary authority over the institutions they manage."
*Lowrance*, 20 F.3d 529 at 535 (quoting *Sher v. Coughlin*, 739
F.2d 77, 82 (2d Cir. 1984) and *Hewitt v. Helms*, 459 U.S.
460, 467 (1983)). With this cautionary language in mind,
the Court finds that plaintiffs' evidence at this time does
not merit the "extraordinary" relief provided by a
preliminary injunction. *Winter*, 555 U.S. at 24.
Accordingly, the motion for a preliminary injunction (Doc.
19) is DENIED.[4]

II. <u>Discovery Motions</u>

---

[4] Plaintiffs argue that the Second Circuit requires a
"*Davidson* hearing" to determine whether "the Essex ban" was
retaliatory. (Doc. 71.) The case reference is to *Davidson
v. Chestnut*, 193 F.3d 144, 148-49 (2d Cir. 1999), in which
the Second Circuit remanded a summary judgment decision for
reconsideration on the question of whether defendants would
have taken certain actions "even if they had not been
improperly motivated." (Citation omitted); (Doc. 59 at 5.)
*Davidson* did not explicitly require a hearing, and did not
address preliminary injunctions. Moreover, the Second
Circuit does not generally require evidentiary hearings on
preliminary injunction motions. *See Maryland Cas. Co. v.
Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984
(2d Cir. 1997). The motion for a "*Davidson* hearing" (Doc.
71) is therefore DENIED.

A preliminary injunction motion is not, of course, the final say with respect to the merits, and plaintiffs have petitioned the Court for leave to take discovery so that they might discredit the DOC's evidence.  Their first motion asks the Court to compel discovery related to the IDAP program, as well as responses to outstanding interrogatories and document requests.  (Doc. 42).  In response, counsel for defendants explains that these "discovery materials were misfiled in a separate federal action" filed by Mr. Wool's father, and that responses would be served within thirty days.  (Doc. 57.)  Since that time, defendants have submitted a discovery certificate indicating that the responses were indeed served.  (Doc. 66.)  Plaintiffs' first discovery motion (Doc. 42) is therefore DENIED as moot.

Plaintiffs' next motion seeks to add "Exhibits" to the docket.  (Doc. 48.)  Exhibits are not to be filed with the Court prior to the conclusion of discovery.  Moreover, the proposed exhibits pertain to a motion (Doc. 38) upon which the Court has already ruled.  The motion (Doc. 48) is therefore DENIED.

Plaintiffs have also moved the Court for expedited discovery, and for renewal of their original preliminary

injunction motion. (Doc. 58.) Because the motion for renewal asks the Court to re-visit its prior ruling, the Court construes it as a motion for reconsideration.

The reconsideration standard is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v.. CSX Transp. Inc*., 70 F.3d 255, 257 (2d Cir. 1995). Plaintiffs' motion is based primarily upon defendants' alleged failure to provide discovery. While the matter of future discovery will be addressed, plaintiffs have not offered any "controlling decisions or data that the court overlooked." *Id.* Accordingly, the motion to renew (Doc. 58) is DENIED.

As to the question of expedited discovery, the parties may agree to a discovery schedule that is expedited, but the Court will not order such a schedule at this time. The motion for expedited discovery (Doc. 58) is therefore DENIED.

The current discovery schedule calls for this case to be trial-ready by April 25, 2012. (Doc. 32.) Dispositive

motions were to have been filed by February 15, 2012.  No
such motions were filed, and plaintiffs contend that the
case is not trial-ready.  Consequently, they ask that trial
be postponed until adequate discovery can be performed.
(Docs. 59, 75.)  They have also moved *in limine* to exclude
certain testimony from trial, and for the Court to allow
depositions.  (Docs. 76, 77.)

     As defendants have not objected to plaintiffs' requests
for discovery, the Court will allow the parties to file a
new, stipulated discovery schedule.  Because the new
schedule will allow for additional discovery and dispositive
motions, this case will not be placed on the trial calendar
at this time, and plaintiffs' pre-trial motions (Docs. 76,
77) are DENIED as premature.  Plaintiffs' motion for *in
camera* review of all documents not provided by defendants in
discovery (Doc. 72) is also DENIED as premature.

III.  <u>Motion To Amend</u>

     The new discovery schedule should be entered after the
Complaint in this case is finalized.  Plaintiffs' motion to
amend the Complaint (Doc. 59) suggests that a new pleading
is required.  However, their motion does not comply with
Local Rule 15(a), which requires a motion to amend to

include a red-lined version of the proposed amendment "clearly designating additions and deletions," and "a non-redlined reproduction of the entire amended filing." L.R. 15(a). Furthermore, plaintiffs' incorporation of the initial Complaint by reference (Doc. 59 at 7) is expressly forbidden by the Local Rule. L.R. 15(b).

If plaintiffs wish to amend their Complaint, they may submit to the Court a motion that complies with the Local Rule. The motion to amend shall be filed within 30 days of this Opinion and Order. After the Court rules on the motion to amend, the parties shall file a stipulated discovery schedule within 30 days of the Court's ruling. The current motion to amend (Doc. 59) is DENIED without prejudice.

IV. <u>Motion for Leave to Take Interlocutory Appeal</u>

Plaintiffs have moved for leave to file an interlocutory appeal because the Court has allegedly denied them discovery, and has "fail[ed] to subject Defendants' actions to the *Davidson* review." (Doc. 62 at 6-7.) The availability of interlocutory appeals is an exception to the general rule that federal appeals courts have jurisdiction only over final decisions. Leave to file an interlocutory appeal is reserved for "exceptional cases" where early

appellate review might "avoid protracted and expensive litigation." *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F. Supp. 170, 172 (S.D.N.Y. 1987); *see also German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995). By statute, a court may grant leave to file an interlocutory appeal if it finds that three conditions have been met: first, that the ruling on which the appeal is sought involves a controlling question of law; second, that there is substantial ground for a difference of opinion as to that controlling question of law; and, third, that an immediate appeal will materially advance the litigation. *See* 28 U.S.C. § 1292(b).

Here, plaintiffs have not identified a substantial difference of opinion about a controlling question of law regarding either the need for discovery or the alleged *Davidson* issue. Nor will an immediate appeal materially advance this litigation. Indeed, in light of the instant Opinion and Order, an appeal regarding discovery would only delay the litigation going forward. Moreover, the Court does not find that this case presents "exceptional circumstances" that would warrant a departure from the general rule of finality. *See Blue Water Yacht Club Ass'n*

*v. N.H. Ins. Co.*, 355 F.3d 139, 141 (2d Cir. 2004)  The motion for leave to file an interlocutory appeal (Doc. 62) is therefore DENIED.

<u>Conclusion</u>

For the reasons set forth above, Mr. Wool's motion for a preliminary injunction (Doc. 19) is DENIED.  The following motions are also DENIED: motion to compel discovery (Doc. 42); motion to add exhibits (Doc. 48); renewed motion for injunctive relief and motion for expedited discovery (Doc. 58); motion to amend Complaint (Doc. 59); motion to take interlocutory appeal (Doc. 62); motion for hearing (Doc. 71); motion to postpone trial date (Doc. 75); motion to postpone trial date and to rule on all pending motions (Doc. 75); motion to rule on pending motions and allow depositions (Doc. 76); and motion *in limine* to exclude certain testimony (Doc. 77).

If plaintiffs wish to move for leave to amend their Complaint, they may submit a motion that complies with Local Rule 15.  The motion to amend shall be filed within 30 days of this Opinion and Order.  After the Court rules on the motion to amend, the parties shall file a stipulated discovery schedule within 30 days of the Court's ruling.

Dated at Burlington, in the District of Vermont, this 30th day of May, 2012.

/s/ William K. Sessions III
William K. Sessions III
Judge, United States District Court